```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

ANDREA BARROS                   :
                                :
        v.                      :   CIVIL NO. 3:03CV1613(AHN)
                                :
KEVIN MILLER and                :
NEW HAVEN BOARD OF EDUCATION    :
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Andrea Barros ("Barros"), a New Haven public school teacher, alleges that defendants Kevin Miller ("Miller") and the New Haven Board of Education ("BOE") unlawfully retaliated against her in violation of 42 U.S.C. § 1983 for exercising her First Amendment rights to freedom of speech, freedom of association, and freedom to petition for redress of grievances. Defendants now move for summary judgment on the grounds that (1) Barros did not suffer an adverse employment action as a result of her speech, and (2) they cannot be held liable as a matter of law on the basis of qualified immunity. For the following reasons, defendants' motion [dkt. #25] is granted.

### BACKGROUND

Barros is a state-certified elementary public school teacher in New Haven, Connecticut. During the 2002-2003 school year, Barros was a third-grade teacher at Clinton Avenue Elementary School ("CAS"). At that time, she had been at CAS for approximately six years and had occupied classroom 12 for that

entire period.  Miller, who had been an assistant principal at other New Haven public schools, became the school principal at CAS in the fall of 2002.  Miller's mandate was to improve Connecticut Mastery Test ("CMT") scores at the school.  Not long after his arrival, Barros verbally complained to both the BOE and City of New Haven that Miller was sexually abusing and harassing her and other female teachers and staff; was having a "public love affair" with a female teacher at CAS; and, along with a close male associate at CAS, was physically abusing some of the children.

Miller also had concerns about Barros.  In particular, he learned that Barros continued to use certain restricted textbooks at CAS.  Miller considered this to be a serious violation because the third-grade teachers were supposed to follow a strict mandatory curriculum in order to ensure that third-graders would be prepared to take the CMTs in the fourth grade.  As a result, Miller decided to reassign Barros to teach fourth grade instead.

Under the collective bargaining agreement then in effect between the BOE and the teacher's union, a teacher could be assigned to a new grade or classroom if the assignment reflected "the best interests of the school system" and with written notification from the superintendent.  On June 3, 2003, Miller arranged to meet with Barros to inform her of his decision to reassign her, but Barros did not attend the meeting.  Miller sent

her a letter instead stating that her "teaching assignment at CAS for the 2003-2004 academic year is fourth (4th) grade." Even though the reassignment did not affect her wages, benefits, or work hours, Barros was not pleased about the reassignment because "the fourth grade curriculum is completely different from that of the third grade, so the change from third grade to fourth grade . . . [required her] to learn something completely different from what she had been teaching."

A week later, on June 11, 2003, Barros sent a 23-page letter to the director of personnel and the superintendent of schools complaining about Miller. The letter contained the same allegations that Barros had voiced earlier in the year, namely that Miller had sexually abused and harassed female teachers and staff; that he was involved in a public love affair with one of the female teachers at the school; and that he had physically abused some of the students.

The conflict between Barros and Miller grew worse. In particular, Miller decided in June 2003, to relocate Barros from classroom 12 to classroom 14 purportedly so that all the fourth-grade classrooms would be next to one another. However, he neglected to inform Barros of this fact. When she learned about the room change one month later she called Miller and told him that she did not want to move because she had just painted the classroom and "had done a great deal of work on the room."

Miller told Barros that he could give her "a can of paint," and that if she did not like the arrangement "maybe [she] should just get out." Barros felt that the new classroom "was filthy and disgusting . . . and typical of the worst of inner-city classrooms."

Later, Barros complained to the teacher's union president that Miller was disposing of her personal belongings located in the classroom. The BOE instructed Miller not to remove Barros's personal effects from the room. Angered by her actions, Miller stated that he knew what Barros was up to and that she had better stop before she got herself deeper into hot water.

Around the same time, Barros filed a complaint with the Connecticut Department of Children and Families (DCF) alleging that Miller had physically abused students. A subsequent DCF investigation found that Barros's allegations were unsubstantiated. Shortly thereafter, and before the start of the 2003-2004 school year, the Superintendent of Schools, Reginald Mayo ("Mayo"), transferred Barros to another New Haven public school. Mayo told the union president that he had transferred Barros because he considered her to be a "problem." Despite an opening in the third grade at the new school, Barros was assigned to teach fifth grade.

## STANDARD

Summary judgment should be granted if the record

demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Fed. R. Civ. P. 56(c).  The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and all ambiguities and inferences that may reasonably be drawn from the facts must be viewed in the light most favorable to the nonmoving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, to defeat summary judgment the nonmoving party must come forward with evidence such as affidavits, deposition testimony, answers to interrogatories and admissions on file, that show there is a genuine factual issue for trial.  See, e.g., Amnesty Am. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  A disputed issue is not created by a mere allegation in the pleadings, see Applegate v. Top Assoc., Inc., 425 F.2d 92, 96 (2d Cir. 1970), or by surmise or conjecture, see Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Conclusory assertions also do not create a genuine factual issue.  See Delaware & Hudson Ry Co. v. Conrail, 902 F.2d

174, 178 (2d Cir. 1990). Where affidavits are submitted on summary judgment they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

## DISCUSSION

Barros's § 1983 claim alleges that Miller and the BOE unlawfully retaliated against her for exercising her First Amendment rights to freedom of speech, freedom of association, and freedom to petition for redress of grievances, by reassigning her, first to teach fourth grade in a different classroom, and ultimately, to teach fifth grade in a different school. Barros submits that she engaged in constitutionally protected speech by (1) verbally complaining to the BOE and the City of New Haven that Miller was sexually harassing female school teachers and staff, having an affair with a teacher, and abusing some of the students; (2) repeating those complaints in a June 2003 letter to Mayo and the director of personnel; and (3) filing a July 2003 complaint with DCF. She further contends that her reassignment

to teach fourth grade in a different and less desirable classroom, and then to teach fifth grade in a different school constituted adverse employment actions.  Defendants now move for summary judgment on the grounds that (1) Barros's reassignment did not constitute an adverse employment action, and (2) that they are entitled to qualified immunity.

I.   First Amendment Retaliation

To state a prima facie case of First Amendment retaliation under § 1983, plaintiff must offer some tangible proof that (1) she engaged in constitutionally protected speech; (2) she suffered an adverse employment action; and (3) the speech was a substantial or motivating factor for the adverse employment action.  See Burkybile v. Board of Ed., 411 F.3d 306, 313 (2d Cir. 2005) (citation omitted).  Because the defendants conceded at oral argument that Barros did engage in constitutionally protected speech, only the last two factors warrant discussion.

   A.   Adverse Employment Action

Defendants contend that they are entitled to summary judgment on the retaliation claim because a jury could not find that Barros's reassignment to teach the fourth grade in a different classroom and then to teach the fifth grade in a different school constituted an adverse employment action.

There are no bright line rules for what type of action constitutes an adverse employment action.  See Wanamaker v.

Columbian Rope Co, 108 F.3d 462, 466 (2d Cir. 1997).  Courts typically look at whether the action had an adverse effect on a plaintiff's wages, benefits, or work hours; was more than an inconvenience or alteration of the plaintiff's job responsibilities, and was the type of action that is "reasonably likely to deter" employees from engaging in protected speech. See Staff v. Pall Corp., 233 F. Supp.2d 516, 531 (S.D.N.Y. 2002) ("changes in assignment or work-related duties do not ordinarily constitute adverse employment actions if unaccompanied by a decrease in salary or work hour changes") (citation and quotations omitted).

    Barros concedes that the reassignment did not affect her wages, benefits, work hours, or opportunity to accrue seniority.  She also does not dispute that she was certified to teach elementary school-grade children.  Thus, even if teaching another grade "required her to learn something completely different," there is nothing to suggest the reassignment constituted anything more than a mere inconvenience or an alteration of job responsibilities, both of which are not actionable.  See Galabya v. New York Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  Moreover, although Barros states in her affidavit that involuntary reassignments like hers are imposed "only when a teacher is being punished or pushed out of the school system," this type of self-serving, factually-unsupported conclusory

statement is not the type of evidence that is sufficient to create a triable issue of fact. See <u>Geyer v. Lantz</u>, No.3:03CV1853CFD, 2005 WL 1657126, at *2 (D. Conn. 2005) ("[a] self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment")(citing <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990)); <u>DeMuria v. Hawkes, No.3:00CV1591(AHN)</u>, 2004 WL 2216524, at *8 (D. Conn. 2004) (finding non-movant's affidavit insufficient to create a question of fact that precluded summary judgment because it did not contain supporting evidence that would be admissible in content and substance at trial). Thus, because Barros has not come forward with even a scintilla of evidence to establish this element of her § 1983 claim, the claim cannot survive summary judgment.

Further, because Barros offers no evidence to support her claim that she suffered an adverse employment action, the court need not consider the third element of her § 1983 claim, i.e., whether there was a causal nexus. Accordingly, summary judgment is granted in favor of the defendants on Barros's First Amendment retaliation claim.

II.   <u>Qualified Immunity as to Miller</u>

Similarly, because a jury could not find that a constitutional violation occurred, the court need not consider

whether Miller is entitled to qualified immunity.  See Mandell v. County of Suffolk, 316 F.3d 358, 385 (2d Cir. 2003) (citing Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir. 1999)).

III. Municipal Liability

For the same reasons, the court need not, and does not, consider Barros's claim against the BOE.  In other words, because Barros has failed to come forward with even a scintilla of evidence establishing an essential element of her § 1983 claim, that claim against the municipal board of education must fail as a matter of law.  See Looby v. City of Hartford, 152 F. Supp.2d 181, 187 (D. Conn. 2001) (quotations and citations omitted).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [dkt. # 25] is granted.

SO ORDERED this 30th day of September, 2005, at Bridgeport, Connecticut.

/s/
Alan H. Nevas
United States District Judge